# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KIMBERLY HENRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:19-CV-01381-SGC** |
| | ) | |
| **PANATTE, LLC; LAND HOME** | ) | |
| **FINANCIAL SERVICES, INC; SN** | ) | |
| **SERVICING CORPORATION; and** | ) | **JURY DEMAND** |
| **RELIANT LOAN SERVICING,** | ) | |
| **LLC;** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## SECOND AMENDED COMPLAINT

**COMES NOW** the Plaintiff, Kimberly Henry (hereinafter "Plaintiff"), by and

through her attorneys of record and files her Second Amended Complaint against

Defendants pursuant to FRCP 15(a)(1)(B)[1] as follows:

## JURISDICTION AND VENUE

---

[1] The motion to dismiss by Defendant Land Home and Defendant Panatte [Doc. 14] was filed on September 24, 2019.  This was the first pleading filed by these two defendants and this amendment by right is filed on October 8, 2019.  This is within the 21 days allowed by FRCP 15(a)(1)(B).

1.    This is an action brought by a consumer for violations of the Fair Debt

Collection Practices Act (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]),

the Real Estate Settlement Procedures Act[2], 12 U.S.C. § 2605 ("RESPA"), the

Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") and state law by the

Defendants.

2.    Venue is proper as the Plaintiff lives in this Judicial District and the

Defendants have all done business in this Judicial District.

## PARTIES

3.    The Plaintiff, Kimberly Henry, (hereinafter "Plaintiff"), is a natural person

who resides within this Judicial District.

4.    Defendant Panatte, LLC ("Defendant" or "Panatte") in this action is a foreign

corporation doing business in this Judicial District, and is considered a debt

collector under the FDCPA as it was assigned or purchased the alleged debt

at issue when the debt was allegedly in default and it is in the principal

business of collecting debts.

5.    Panatte has not registered in Alabama and has no agent for service in

Alabama.  Since it does not exist on the Alabama Secretary of State website,

the Ohio Secretary of State website, accessed on July 22, 2019, shows it can

---

[2] Any reference the FDCPA or RESPA or TILA or any part thereof encompasses all relevant
parts and subparts thereto.

be served at the following:  Panatte, LLC c/o Incorp Services Inc, 9435 Waterstone Blvd, Suit 140, Cincinnati OH 45249.

6.      Defendant Land Home Financial Services, Inc. ("Defendant" or "Land Home") in this action is a foreign corporation doing business in this Judicial District, and is considered a "servicer" under RESPA and is considered a debt collector under the FDCPA as it was assigned the alleged debt at issue when the debt was allegedly in default and it is in the principal business of collecting debts.

7.      Defendant SN Servicing Corporation ("Defendant" or "SN Servicing") in this action is a foreign corporation doing business in this Judicial District, and is considered a "servicer" under RESPA and is considered a debt collector under the FDCPA as it was assigned the alleged debt at issue when the debt was allegedly in default and it is in the principal business of collecting debts.

8.      Defendant Reliant Loan Servicing, LLC ("Defendant" or "Reliant Loan") in this action is a foreign corporation doing business in this Judicial District, and is considered a "servicer" under RESPA and is considered a debt collector under the FDCPA as it was assigned or purchased the alleged debt at issue when the debt was allegedly in default and it is in the principal business of collecting debts.

## THE SUBJECT MORTGAGE AND THE 2017 LAWSUIT
## AGAINST DEFENDANT PANATTE

9.    Plaintiff had a second mortgage dated **May 26, 2006**, from Mortgage Lenders Network.  (Attached as Exhibit 1.)

10.   The note is dated **May 26, 2006**, and is for an amount of $25,400.  (Attached as Exhibit 2.)

11.   The note and mortgage related to the property address of 6779 Markham Drive, Trussville, Alabama 35173.

12.   In 2017 Defendant Panatte claimed to have purchased the second mortgage sometime in the past.

13.   Panatte threatened foreclosure in 2017 and Plaintiff sued Panatte laying out how there was no debt owed, that Panatte had violated the law for laying the groundwork to foreclose, that Panatte had violated state and federal law, etc.

14.   That case was filed in the Circuit Court of Jefferson County, Alabama on **October 10, 2017**, with a case number of 01-CV-2017-904254.

15.   Panatte immediately canceled the foreclosure after Henry's filing of the state court lawsuit in 2017.

16.   On **November 1, 2017**, Panatte removed the case to federal court in the Northern District of Alabama with a case number of 2:17-CV01965-KOB.

17.   Ultimately, the case was resolved[3] and on **February 20, 2018**, Panatte filed in the Jefferson County Probate Court a document titled "Corporate Cancellation And Release" for Plaintiff's property related to this second mortgage.  (Attached as Exhibit 3.)

18.   This document stated that the debt "having been paid in full, said lien is hereby fully released, satisfied, discharged, and canceled." (Emphasis added)

19.   Pretty simple – as of February 20, 2018, there was **no longer any debt owed on the mortgage**.

20.   One does not need to be an expert in the intricacies of mortgages and the bundling of mortgages into securities sold on Wall Street to understand this – instead anyone who has ever sold a house understands that a document filed in Probate Court saying the debt is paid should be the end of the matter.

21.   But not so for Defendant Panatte, as it did not let this non-existent debt go so easily.

22.   Thereafter, Defendant Panatte sent the non-existent debt to be serviced on its behalf by Defendant Land Home who collected on this non-existent debt and threatened foreclosure.

---

[3] Judge Bowdre dismissed the case on March 12, 2018.

23.   This was the intention of Defendant Panatte – that Defendant Land Home would collect the debt on behalf of Defendant Panatte against Plaintiff even though Defendant Panatte knew no debt was owed.

24.   At this time, Defendant Land Home also knew that Plaintiff owed no debt to Defendant Panatte but Defendant Land Home was eager to collect the debt and reap ill-gotten gains from the bogus collection activity against Plaintiff.

25.   On **July 20, 2018**, a mortgage statement was sent to Plaintiff by Defendant Land Home on behalf of Defendant Panatte.  (Attached as Exhibit 4.)

26.   Defendant Land Home's collection notice said (among other things) the monthly payment amount is $259.32, amount owed was $31,345.21, there were over $5,000 in fees and charges, that the failure to bring the loan current may result in foreclosure, that at the time Plaintiff was 1,845 days late, that information may be credit reported about Plaintiff and that the communication was from a debt collector.

27.   Thus, Defendant Land Home was collecting the non-existent debt against Plaintiff.

28.   Defendant Panatte was also collecting the non-existent debt against Plaintiff by and through the intended and carried out actions of its agent Defendant Land Home.

29.  As a direct result of the collection activity described which was carried out by Defendant Land Home and Defendant Panatte, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claims from Defendant Land Home and Defendant Panatte all damages allowable under the law.

**PLAINTIFF SENT DISPUTE LETTERS AND RESPA LETTERS TO DEFENDANT LAND HOME TO FIGURE OUT WHY IT WAS COLLECTING ON THIS DEBT AND WHAT IT HAD DONE TO MAKE SURE THIS WAS A VALID DEBT**

30.  On **July 26, 2018**, Plaintiff sent two dispute letters and requests for information[4] under RESPA to Defendant Land Home.  (Attached as Exhibit 5.)

31.  These letters were sent to the specially designated mailing address of 3611 South Harbor Blvd, Suite 100, Santa Ana, CA 92704 (see first page of Exhibit 4).

---

[4] As of January 2014, the old RESPA "QWR" (Qualified Written Request) is now known as either a "Request For Information" or a "Notice Of Error" letter.  While it is similar to the old QWR, the law was substantially changed in January 2014 and so reliance on old case law interpreting pre 2014 QWRs is often at odds with the new law.

32.     Plaintiff clearly disputed the debt, as allowed under the FDCPA.

33.     In addition, over ten items of information[5] were sought in the two letters.

34.     These items relate specifically to the servicing of the loan by Defendant Land Home.

35.     The letters allowed Defendant Land Home to identify the Plaintiff and the non-existent debt.

36.     These letters were received by certified mail by Defendant Land Home on or about **July 30, 2018**.  (Attached as Exhibit 6.)

37.     Defendant Land Home acknowledged receipt of the letters on **August 16, 2018**, which is well in excess of the allowable five (5) business days to acknowledge receipt of the letters under RESPA.  (Attached as Exhibit 7.)

38.     The August 16, 2018, letter from Defendant Land Home admitted it is a debt collector attempting to collect a debt from Plaintiff.

39.     On **August 23, 2018**, Defendant Land Home sent a letter to Plaintiff. (Attached as Exhibit 8.)

40.     This letter states the mortgage statement dated July 20, 2018, was sent in error.

41.     Of course, Defendant Land Home and Defendant Panatte already knew this so the claim of this being in error is untrue.

---

[5] Letters sent under RESPA do not have to include alleged errors – instead it is allowable to seek information related to servicing, or to request errors to be corrected, or do both.

42.  No explanation for how this error occurred was provided.

43.  No explanation was given for how this possibly could have been a bona fide error – the reason is this was not a bona fide error.

44.  Instead it was an intentional error and Defendant Land Home maintained no procedures to avoid this type of error.

45.  Defendant Land Home claims its records indicate the loan was satisfied February 20, 2018[6] and that this matter has been corrected in its system.

46.  Defendant Land Home again admits that it is a debt collector.

47.  On **August 24, 2018**, Defendant Land Home wrote to Plaintiff and showed her that nothing was owed on this loan.  (Attached as Exhibit 9.)

48.  Defendant Land Home refused to provide a Section 1692g notice to Plaintiff as required by FDCPA.

49.  Defendant Land Home did not send Plaintiff a Section 1692g notice as required by FDCPA within 5 days of the first communication with Plaintiff.

50.  Sending a bogus collection notice and then admitting, when caught, that the collection is on a paid off debt, does not excuse Defendant Land Home from complying with Section 1692g.

---

[6] This is the date the "Corporate Cancellation And Release" was filed in Probate Court alerting the world that the debt was paid.

51.     Defendant Land Home refused to answer the eleven or so questions posed to it by Plaintiff in her two RESPA letters, other than to say it was acting, at least prior to February 20, 2018, as the servicer for Panatte and that it had not credit reported.

52.     It refused to answer who it currently was acting as the servicer for and it refused to answer the other valid requests for information from Plaintiff.

53.     Under federal law, Plaintiff is entitled to all the information she requested and also the information that is required (such as the 1692g notice) and being deprived of this information put Plaintiff in a vulnerable position and led to the further violations of the law described below.

54.     As a direct result of the collection activity described as well as the refusal to provide information that Defendant Land Home and Defendant Panatte[7] are required to provide, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional

---

[7] Defendant Land Home has at all times acted as the agent and debt collector for Defendant Panatte and since Defendant Panatte is also a debt collector, it is responsible for the violations of the FDCPA by Defendant Land Home.

damages and claim from Defendant Land Home and Defendant Panatte all damages allowable under the law.

55.    Instead of this being the end of the matter, it was simply the beginning.

**THE COLLECTION AND HARASSMENT CONTINUES IN 2019 WITH TWO NEW PLAYERS INVOLVED ALONG WITH DEFENDANTS LAND HOME AND PANATTE**

56.    On **January 14, 2019**, Defendant Land Home wrote to Plaintiff and informed her that the loan servicing was being transferred from Defendant Land Home to Defendant SN Servicing effective January 28, 2019.  (Attached as Exhibit 10.)

57.    Defendant Land Home did not explain how the servicing rights on a loan that was paid off could be transferred.

58.    Defendant Land Home did not explain how the servicing rights on a loan that was satisfied and had been so designated in Probate Court could be transferred.

59.    Defendant Land Home did not explain why the non-existent debt that in August of 2018 it admitted should not have been collected on would now be sent to a new servicer to be collected on.

60.    This letter references payments multiple times.

61.    There cannot be payments on a loan that is paid off.

62. This letter also states that "[t]his is an attempt to collect a debt and any information will be used for that purpose."

63. Finally, the letter does not tell Plaintiff that Defendant Land Home has explained to Defendant SN Servicing that this loan is paid off and the attempt to collect on it in July 2018 was "in error" or that Defendant Land Home failed to explain this to Defendant SN Servicing.  Plaintiff will not know the answer until discovery takes place.

64. Defendant Land Home conducted of transferring the loan to another debt collector to collect and its communication with plaintiff regarding the transfer, mentions of payments due from plaintiff constitute collection activity and this collection activity was on behalf of Defendant Panatte.

65. Defendant Land Home and Defendant Panatte knew that by transferring the servicing rights and ownership of the non-existent debt to Defendant SN Servicing and Defendant Reliant Loan, this would result in further collection activity against Plaintiff.

66. This was the intent of both Defendant Land Home and Defendant Panatte.

67. Both Defendant Land Home and Defendant Panatte knew this would harm and damage Plaintiff and it did.

68. As a direct result of the collection activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but

not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from Defendant Land Home and Defendant Panatte all damages allowable under the law.

69.   On **February 1, 2019**, Defendant SN Servicing sent Plaintiff a document telling her the servicing of her mortgage loan had been transferred from Defendant Land Home to Defendant SN Servicing. (Attached as Exhibit 11.)

70.   This document states, this means "that is, the right to collect payments from you…." (Attached as Exhibit 11.)

71.   The letter admits that Defendant SN Servicing is a debt collector collecting a debt. (Attached as Exhibit 11.)

72.   Defendant SN Servicing admits it was acting on behalf of Defendant Reliant Loan. (Attached as Exhibit 11.)

73.   No mention is made how a loan that is paid off can have payments collected on it. (Attached as Exhibit 11.)

74.   Defendant SN Servicing knew the loan had been paid off but decided to collect on its own behalf and on behalf of Defendant Reliant Loan on this non-existent debt.

75.   It told Plaintiff that if she wished to send a RESPA letter she should send to 323 Fifth Street, Eureka, CA 95501.

76.   Also on **February 1, 2019**, Defendant SN Servicing told Plaintiff the loan itself had been transferred to Defendant Reliant Loan.  (Attached as Exhibit 12.)

77.   No mention is made that the loan is actually paid off or how a paid off loan can be transferred.

78.   A third **February 1, 2019**, letter was sent to Plaintiff by Defendant SN Servicing.  (Attached as Exhibit 13.)

79.   This relates to insurance and mentions that "If your loan is secured by real estate…" (Attached as Exhibit 13.)

80.   No mention is made that Defendant SN Servicing made no effort to determine if this loan was secured by real estate.

81.   In fact, both Defendant SN Servicing and Defendant Reliant Loan knew the loan was paid off as the Probate Court clearly showed as of February 20, 2018, that the loan was paid off.

82.   Either Defendant SN Servicing and Defendant Reliant Loan looked at the Probate Court before collecting against Plaintiff (which is the bare minimum step to take for any reasonable servicer and debt purchaser) or Defendant SN Servicing and Defendant Reliant Loan chose to close their eyes to the truth in

an effort to illegally collect and have plausible deniability if they got caught. Plaintiff alleges these alternative/contradictory facts as allowed under Rule 8.

83.   Defendant SN Servicing did not explain why Plaintiff needed to take steps with respect to insurance on a paid off loan.

84.   This letter also admits Defendant SN Servicing is a debt collector collecting a debt and is acting on behalf of Defendant Reliant Loan.

85.   Defendant SN Servicing also stated it would share private information about Plaintiff including credit reporting on Plaintiff.

86.   On **February 6, 2019**, Defendant SN Servicing sent a letter to Plaintiff informing her she was late on her payments to Defendant SN Servicing. (Attached as Exhibit 14.)

87.   It represented that the payment that is due is for July 1, 2013. (Attached as Exhibit 14.)

88.   Defendant SN Servicing does not explain how Plaintiff owes in February 2019 for a payment due on July 1, 2013, when the loan was paid off in February 2018.  (Attached as Exhibit 14.)

89.   Instead the letter references options that include Plaintiff having to give up ownership of her home. (Attached as Exhibit 14.)

90.   Defendant SN Servicing does not explain how this is a possibility when the loan Defendant SN Servicing is collecting on is paid off.

91.   Defendant SN Servicing admits it is a debt collector collecting this debt. (Attached as Exhibit 14.)

92.   Dated **February 25, 2019** is a Defendant SN Servicing letter to Plaintiff purporting to be a Section 1692g notice under the FDCPA.  (Attached as Exhibit 15.)

93.   This letter must be sent within 5 days of the initial communication, which was sent on February 1, 2019.

94.   Thus, the Section 1692g notice was not sent in a timely manner as required by the FDCPA.

95.   The letter claims Plaintiff owes over $58,000. (Attached as Exhibit 15.)

96.   It claims Defendant Reliant Loan is the owner of the loan. (Attached as Exhibit 15.)

97.   It further claims Defendant SN Servicing is the servicer who is a debt collector collecting on this debt. (Attached as Exhibit 15.)

98.   This notice provides Plaintiff a thirty-day window to dispute the debt and request verification of the debt. (Attached as Exhibit 15.)

99.   All actions of Defendant SN Servicing were on behalf of its principal Defendant Reliant Loan and as both are debt collectors, then Defendant Reliant Loan is liable for the misconduct of Defendant SN Servicing.

100.   As a direct result of the collection activity described, including the refusal to provide Plaintiff with the information to which she is entitled under the law, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

**PLAINTIFF SENDS A LETTER TO DEFENDANT SN SERVICING AND DEFENDANT RELIANT LOAN TO GET TO THE BOTTOM OF THIS**

101.   On **March 6, 2019**, within the 30 day window allowed by the February 25, 2019, letter and by the FDCPA, Plaintiff sent a dispute letter to Defendant SN Servicing and to Defendant Reliant Loan[8].  (Attached as Exhibit 16.)

102.   Plaintiff's letter points out Plaintiff does not owe any money to either Defendant SN Servicing or Defendant Reliant Loan.

---

[8] Both Defendant SN Servicing and Defendant Reliant Loan are debt collectors and Plaintiff had the right to send this dispute letter to both of them.  At all times Defendant SN Servicing has acted as the agent for Defendant Reliant Loan and thus Defendant Reliant Loan is liable for the wrongful acts of Defendant SN Servicing.

103. The letter further informs these two Defendants (Defendant SN Servicing and Defendant Reliant Loan) that Plaintiff does not know who they are and has never done business with them.

104. The letter asks who Defendant Reliant Loan bought the loan from, how much it paid, and how it supposedly bought the loan.

105. The letter warns Defendant Reliant Loan and Defendant SN Servicing not to credit report or foreclose on Plaintiff's home.

106. This letter, sent to both Defendant SN Servicing and Defendant Reliant Loan, is also a request for information letter under RESPA requesting multiple pieces of information including how Defendant Reliant Loan bought the debt, from who did it buy the debt, and how much was paid for the debt.

107. The letter was sent to the following address for Defendant SN Servicing:  323 Fifth Street, Eureka, CA 95501 (this address is found on page 3 of Exhibit 11).

108. The letter was sent to the following address for Defendant Reliant Loan:  920 Cassatt Road, Suite 210, Berwyn, PA 19312 which is the only address listed for Defendant Reliant Loan on its website (www.ReliantCares.com)  and found on page 1 of Exhibit 12.

109. On **March 6, 2019**, a mortgage statement was sent by Defendant SN Servicing, which contains numerous misstatements. (Attached as Exhibit 17)

110.   As merely examples, but not exhaustive of the inaccuracies, the mortgage statement claims Plaintiff owes $34,074.77, that she is 2073 days late, that $2,622.37 in late fees are owed while Defendant Land Home[9] had the servicing, that negative credit reporting may occur and foreclosure may occur. (Attached as Exhibit 17)

111.   The mortgage statement explicitly threatens, "[f]ailure to bring your loan current may result in fees and foreclosure – the loss of your home." (Attached as Exhibit 17)

112.   Again, there is no explanation for how Plaintiff owed money on a debt that is not owed and how credit reporting can happen on a debt that is not owed and how foreclosure can happen when Plaintiff owes nothing to Defendant SN Servicing and Defendant Reliant Loan.

---

[9] Defendant Land Home and Defendant Panatte could not have legally charged these fees as no money was owed and the late fees (even if money was owed) are outside the bounds of the note/contract which controls the amount of late fees. The Note (Exhibit 2 at paragraph 4(a)) says the amount of late fee will be 5% of the amount due but not less than $10.00 or more than $100.00. The amount of the monthly payment (even though none was owed) is $259.32 so 5% is $12.97, not $100.00. The alleged claimed late fees by Defendant Land Home and Defendant Panatte is $2,622.37 so that amount divided by $12.97 would indicate there were over 202 months of late payments. This is over 16 years. But the loan was taken out in 2006, so even if every single payment was late, the loan could not have been more than 13 years late in 2019. Again, there was no loan and no debt owed after February 2018 but the above is to show how sloppy and reckless Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan have been in this matter, as simple math would have told all of them that the numbers are wrong. Had anyone taken the time to look at this, that person would have discovered terrible errors were being made. Had any reasonable computer system been employed, it would have flagged this account as highly suspect and in need of great scrutiny. None of this happened and here the parties are as a result.

113.   Defendant SN Servicing received plaintiff's letter on an unknown date (the green card is not dated but it is believed to have been on or about March 11, 2019) and was received by Defendant Reliant Loan on **March 11, 2019**. (Attached as Exhibit 18.)

## ODD RESPONSES BY DEFENDANT SN SERVICING AND DEFENDANT RELIANT LOAN

114.   On **March 19, 2019**, a lawyer named William A. Fogleman, not licensed in Alabama, wrote a letter to Plaintiff, an Alabama resident about collection activity (including threatened foreclosure) in Alabama.  (Attached as Exhibit 19.)

115.   It notes that Plaintiff's letter was received on March 11, 2019, by Defendant SN Servicing. (Attached as Exhibit 19.)

116.   Attorney Fogleman states that "[p]lease be advised I represent Reliant Loan Servicing LLC" even though the letterhead says Defendant SN Servicing. (Attached as Exhibit 19.)

117.   It is unclear if Attorney Fogleman is responding on behalf of Defendant Reliant Loan or only on behalf of Defendant SN Servicing or both so all are alleged.

118.   In any event, the letter was late as Defendant SN Servicing must acknowledge the letter within 5 business days of receipt.[10]

119.   Plaintiff's letter was received on Monday, March 11, 2019, and five business days later would be March 18, 2019 (excluding Saturday and Sunday).

120.   But the letter was not sent until March 19, 2019.

121.   Defendant Reliant Loan never acknowledged receipt of the letter so it violated this law also.

122.   On **April 3, 2019**, Defendant SN Servicing sent a mortgage statement to Plaintiff.  (Attached as Exhibit 20.)

123.   The amount due is listed as $34,434.09. (Attached as Exhibit 20.)

124.   Plaintiff is told she is 2101 days delinquent. (Attached as Exhibit 20.)

125.   Foreclosure is threatened again. (Attached as Exhibit 20.)

126.   A late fee for a missed payment was listed as $100, assessed on April 1, 2019. (Attached as Exhibit 20.)

127.   The Note (Exhibit 2 at paragraph 4(a)) says the amount of late fee will be 5% of the amount due but not less than $10.00 or more than $100.00.

---

[10] Not only is this the law but also Defendant SN Servicing admitted this is the requirement in Exhibit 11, page 3 when it states "[Y]our servicer must provide you with a written acknowledgement within 5 Business Days of receipt of your request."

128. The amount of the payment (even though none is owed) is stated as $259.32[11] so 5% is $12.97, not $100.00.  Simple math would have told Defendant SN Servicing and Defendant Reliant Loan that the numbers are wrong.  Had anyone taken the time to look at this, that person would have discovered terrible errors were being made.  Had any reasonable computer system been employed, it would have flagged this account as highly suspect and in need of great scrutiny.

129. On **April 22, 2019**, a letter bearing the letterhead of Defendant SN Servicing was written by Attorney Fogleman (who states "[p]lease be advised I represent Reliant Loan Servicing LLC") and it notes that an additional 15 days is requested to finish researching Henry's questions.  (Attached as Exhibit 21.)

130. On **May 8, 2019**, a mortgage statement from Defendant SN Servicing was sent to Plaintiff.  (Attached as Exhibit 22.)

131. This mortgage statement shows (incorrectly) that Plaintiff owes $34,793.41; is 2136 days delinquent; threatens credit reporting; and threatens foreclosure. It also has the illegal $100 late fee and threatens another such fee. (Attached as Exhibit 22.)

---

[11] $259.32 is the contract amount under the Note (Exhibit 2) and even the mortgage statement reflects this amount – see Exhibit 20 under "Explanation of Amount Due."

132.  On **May 13, 2019**, attorney Fogleman wrote on Defendant SN Servicing letterhead a letter to Plaintiff.  (Attached as Exhibit 23.)

133.  The letter states that the attorney represents Defendant SN Servicing as the servicer for Defendant Reliant Loan. (Attached as Exhibit 23.)

134.  The letter admits it is a debt collection letter. (Attached as Exhibit 23.)

135.  The letter claims Plaintiff owes the money. (Attached as Exhibit 23.)

136.  Attorney Fogleman claims the payment due is for July 1, 2015.[12] (Attached as Exhibit 23.)

137.  No mention is made by Attorney Fogleman or Defendant SN Servicing or Defendant Reliant Loan about looking at the Probate Court records and seeing the obvious legal document where Defendant Panatte admits the loan is fully satisfied.

138.  Nor is there any reference to checking with Defendant Land Home to see if Defendant Land Home admits that the loan is fully paid off.

139.  Nor does the letter contain any mention of going to Defendant Panatte, who sold the loan to Defendant Reliant Loan, and asking why a satisfaction of mortgage was filed in Probate Court and how any money could be owed.

---

[12] It is not known if this was meant to be July 2015 or July 2013.  Previous collection letters have falsely told Plaintiff she owed for the July 2013 payment. *See*, for example, Exhibits 14, 17, etc.

140. Even though the note is included, the attorney Fogleman on behalf of Defendant SN Servicing and/or Defendant Reliant Loan did not bother to look to see if the numbers even remotely made sense.

141. Why would a loan two thousand plus days late be bought without looking at Probate Court?

142. Why would the Note not be examined to see if the late fees of $100 on a $259 payment raised questions?

143. When a consumer asks questions and disputes, why was nothing done by attorney Fogleman or his clients Defendant SN Servicing or Defendant Reliant Loan?

144. Instead, the letter falsely asserts confidently that Plaintiff owes this debt.

145. The confidence is shocking on behalf of Defendant SN Servicing and Defendant Reliant Loan given that no penny of debt was owed and there existed no mortgage on the property.

146. Both Defendant SN Servicing and Defendant Reliant Loan knew no debt was owed by Plaintiff – this is true of the time period before they obtained the non-existent debt, the moment they obtained the non-existent debt, and even as of the date of the May 13, 2019 letter.

147. Both Defendant SN Servicing and Defendant Reliant Loan had plenty of time to research the matter – they received the letter from Plaintiff on or about

March 11, 2019, and the response is made on May 13, 2019.  This is approximately 63 days.  But in all of this time – over two months -- Defendant SN Servicing and Defendant Reliant Loan could not be bothered to admit that no debt was owed and apologize to Plaintiff – instead Defendant SN Servicing and Defendant Reliant Loan doubled down in their brazen attempts to intimidate Plaintiff into paying a debt she does not owe.

148.   And the letter refuses to answer the questions posed by this RESPA letter which go to the heart of the case and were red flags to Defendant SN Servicing and Defendant Reliant Loan that no debt was actually owed and they were falsely collecting a non-existent debt.

149.   Given that Defendant Reliant Loan never even attempted a response to the RESPA letter, logically it utterly failed in responding or acknowledging the letter as required by RESPA.

150.   Whether the defective response was made by Defendant SN Servicing or Defendant Reliant Loan or both, it was insufficient, it was late, and it violates RESPA.

151.   As a direct result of the collection activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI

issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim Defendant SN Servicing and Defendant Reliant Loan all damages allowable under the law.

**DEFENDANT SN SERVICING CONTINUES TO COLLECT THIS "DEBT" ON BEHALF OF DEFENDANT RELIANT LOAN**

152. On **May 22, 2019**, Defendant SN Servicing sent a letter informing Plaintiff of yet another $100 late fee charge imposed on May 12, 2019 on the non-existent debt.  (Attached as Exhibit 24.)

153. This letter admits Defendant SN Servicing is a debt collector collecting a debt from Plaintiff. (Attached as Exhibit 24.)

154. No debt is owed and even if there was a debt owed, the late fee cannot be $100.00 as spelled out above.

155. How this obvious error was not caught speaks to the lack of any interest in knowing the truth – instead both Defendant SN Servicing and Defendant Reliant Loan were only interested in maximizing profits on this purchased debt regardless of the fact that no money was owed.

156. On **June 5, 2019**, a mortgage statement from Defendant SN Servicing was sent to Plaintiff.  (Attached as Exhibit 25.)

157. This mortgage statement incorrectly claims that Plaintiff owes $35,152.73; is 2164 days delinquent; threatens credit reporting; and threatens foreclosure. Like the other statements, it threatens and shows a late fee which is illegal and not allowed by the contract. (Attached as Exhibit 25.)

158. On **June 7, 2019**, Defendant SN Servicing wrote to Plaintiff and informed her that she was at risk of losing her home and to contact them to work out loss

mitigation options.  (Attached as Exhibit 26.)  Defendant SN Servicing admits it is a debt collector on behalf of Defendant Reliant Loan in this letter. (Attached as Exhibit 25.)

159.   It claims to have tried to contact Plaintiff but this is untrue as Plaintiff received no messages[13] or letters (other than what has been described in this Amended Complaint) from Defendant SN Servicing or Defendant Reliant Loan. (Attached as Exhibit 25.)

160.   On **July 3, 2019**, a mortgage statement from Defendant SN Servicing was sent to Plaintiff.  (Attached as Exhibit 27.)

161.   This mortgage statement shows (incorrectly) that Plaintiff owes $35,512.05; is 2192 days delinquent; threatens credit reporting; and threatens foreclosure.

162.   Again, it has the bogus claims about late fees and is as defective as all the other monthly mortgage statements.

163.   Defendant SN Servicing sent a mortgage statement dated **August 7, 2019**, to Plaintiff in its further attempts to collect a non-existent debt from Plaintiff – this was sent on behalf of Defendant SN Servicing as well as Defendant Reliant Loan as have all other mortgage statements.  (Attached as Exhibit 29).

---

[13] If Defendant SN Servicing or Defendant Reliant Loan called and left no message, Plaintiff is not aware of it and typically does not answer unknown or blocked caller ID calls.

164.   This mortgage statement shows (incorrectly) that Plaintiff owes $35,871.37; is 2227 days delinquent; threatens credit reporting; and threatens foreclosure. (Attached as Exhibit 29)

165.   Again, it has the bogus claims about late fees and is as defective as all the other monthly mortgage statements.

166.   As a direct result of the collection activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from Defendant SN Servicing and Defendant Reliant Loan all damages allowable under the law.

## ADDITIONAL FACTS

167.   RESPA applies to Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan and to the loan at issue in this case.

168.   Defendant Land Home, Defendant Reliant Loan, and Defendant SN Servicing are servicers under RESPA, including the definition of 12 U.S.C. §2605(i)(2) & (3) as well as 12 C.F.R. §1024.2.

169.   Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan either directly conducted servicing as alleged above or had its agent do the servicing:   Defendant Land Home and Defendant SN Servicing directly serviced and Defendant Reliant Loan had its agent conduct the servicing on its behalf.

170.   The loan at issue qualifies under RESPA, including 12 C.F.R. §1024.5(a) and 12 C.F.R. §1024.2.  It is a loan on a property that is not used for business or farm purposes but instead is where Plaintiff lives.

171.   Defendant Panatte sold this non-existent debt to Defendant Reliant Loan.

172.   Defendant Panatte made the decision to hire Defendant Land Home to service this non-existent loan.

173.   Defendant Land Home agreed to service this loan knowing, or it should have known, that no debt was owed.

174.   At least by February 20, 2018 (Exhibit 3), Defendant Land Home and Defendant Panatte knew there was no debt owed and no mortgage on the property related to this transaction.

175.   Defendant Panatte and Defendant Land Home knowing no loan was owed, nevertheless continued to collect and allow the servicing and ownership rights to be transferred.

176. Either Defendant Panatte and/or Defendant Land Home told Defendant Reliant Loan and/or Defendant SN Servicing that no loan was owed or they hid this fact from Defendant Reliant Loan and Defendant SN Servicing. Both are alleged as allowed under Rule 8. Discovery will lead to the truth.

177. When Defendant Panatte and/or Defendant Land Home sold or transferred this loan, they fully expected Defendant SN Servicing and/or Defendant Reliant Loan to collect on it.

178. This was the intent of Defendant Panatte and Defendant Land Home to have Plaintiff collected on by Defendant SN Servicing and Defendant Reliant Loan and the act of selling the loan/servicing was to collect this non-existent debt against Plaintiff who owes nothing on this matter.

179. This intent actually occurred as Defendant SN Servicing and Defendant Reliant Loan did collect on this non-existent debt.

180. In any event, all Defendants including Defendant Land Home, Defendant Reliant Loan and Defendant SN Servicing refused to look at the Probate Court that shows no loan is owed.

181. Of course, Defendant Panatte knew what the Probate Court records show as it filed the legal document showing the loan was satisfied.

182. Defendant Reliant Loan and Defendant SN Servicing refused to investigate to see if a debt was owed despite the multitude of red flags – the age of the loan,

the lack of payments, the bogus late charges ($100 on a $259/month payment) the existence of the satisfaction of mortgage, the disputes from Plaintiff, etc.

183.   Defendant Reliant Loan and Defendant SN Servicing knew this but refused to decline this loan when Defendant Land Home and Defendant Panatte offered it.

184.   Defendant Reliant Loan and Defendant SN Servicing refused to back off of their knowingly illegal collection and servicing of this non-existent debt even when Plaintiff raised questions and concerns and disputed this non-existent debt because Defendant Reliant Loan and Defendant SN Servicing were so confident they could extort money out of Plaintiff with the threats to take Plaintiff's home.

185.   Defendant Reliant Loan and Defendant SN Servicing are still collecting this debt to this day, still threatening foreclosure, still threatening to credit report, still improperly adding fees, and taking other collection activities against Plaintiff that are illegal and not allowed by the note/mortgage.

186.   Defendant SN Servicing and Defendant Reliant Loan have not told Plaintiff that they are ceasing collection activities (including threatening foreclosure) and have not told Plaintiff that they will not sell/assign the loan or servicing to another company which would then start the process all over again for Plaintiff.

187. As a direct result of the acts complained of against each and every Defendant (Defendant Panatte, Defendant Land Home, Defendant Reliant Loan, and Defendant SN Servicing), Plaintiff has been caused to suffer, and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

188. It is understandable, natural and foreseeable that if an improper and illegal threat is made to take a consumer's home and to collect on a debt that is not owed, to threaten credit reporting, to threaten and issue illegal late charges, fail to give required notices, fail to investigate, fail to respond to valid requests for information and verification, and all the other wrongful acts described in this Second Amended Complaint by each Defendant, the consumer will find (and Plaintiff did find) this very upsetting and will suffer emotional distress, great mental anguish, stress, anxiety, worry, frustration and embarrassment, physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and Plaintiff claims from each

and every Defendant all damages allowable under the law. Plaintiff has suffered all of this and demands all damages.

## SUMMARY OF VIOLATIONS OF THE FDCPA BY EACH DEFENDANT

### Plaintiff Is A Consumer Under The FDCPA

189. 15 USC Section 1692a(3) defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt."

190. Plaintiff is a natural person.

191. Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan have each alleged that Plaintiff owes money to each Defendant.

192. Plaintiff qualifies as a "consumer" under the FDCPA.

### The Loan/Debt At Issue Is A Consumer Loan Under The FDCPA

193. The term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 USC Section 1692a(5).

194.   Plaintiff took out this loan for Plaintiff's home, which is primarily for "personal, family or household purposes."  This is where Plaintiff lives –- it is not commercial property.

195.   The debt at issue qualifies as a debt under the FDCPA.

**Each Defendant Is A Debt Collector Under The FDCPA**

196.   As described in this Second Amended Complaint, each Defendant has admitted[14] it is a debt collector.

197.   And Plaintiff properly alleges that each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) is a debt collector.

198.   This is the initial pleading and sufficiently puts each Defendant on notice of its claim and has satisfied the plausibility test of pleading.

199.   First, each Defendant has as its principal business the collecting of debts.

200.   Second, each Defendant freely admits that it is a debt collector.

201.   Third, the loan was allegedly in default[15] when each Defendant claims it received the loan.

---

[14] In the original case against Defendant Panatte, Doc 14-23 is a letter from Defendant Panatte to Plaintiff in which it admits that it is a debt collector collecting a debt against Plaintiff.  This is attached as Exhibit 29 hereto.  Defendant Reliant Loan admits that it is a debt collector on its website www.ReliantCares.com (verified on September 18, 2019).

[15] Truthfully, the loan was not in default but the test is whether the Debt Collector alleges the loan to be in default.  Here each Defendant has done so, incorrectly, but they have alleged it.

202.   15 USC Section 1692a(6) states in relevant part:  "The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

203.   Each Defendant uses the instrumentality of interstate commerce and the US mail system by placing calls (interstate and otherwise), mailing letters, credit reporting or threatening to credit report, and by threatening to foreclose, etc.

204.   These actions are all done to collect debts.

205.   The principal purpose of each Defendant is collecting debts.

206.   Plaintiff alleges that each Defendant regularly collects or attempts to collect debts owed to another entity.

207.   The FDCPA applies to mortgage loans, which were allegedly in default at the time each Defendant began to collect on such loans.

208.   All Defendants claim that the debt was in default when they first began to collect on it.

209.   While it has been a bit of a moving target, each Defendant has said that the loan is owing for July 2013 or July 2015 and each Defendant began collecting on the loan after either one of these points in time.

210. The examples in this Second Amended Complaint are enough to suffice for notice pleading that each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) is a debt collector.

211. At no time has any Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) ever told Plaintiff that any Defendant was not a debt collector or was not collecting a debt.

212. Each Defendant is an admitted debt collector seeking to collect this personal consumer debt from Plaintiff, both seeking money from the Plaintiff and seeking to take Plaintiff's home.

**Summary[16] of FDCPA Violations By Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan)**

213. Each Defendant (directly or through its agent debt collector) has violated 15 USC Section 1692d which forbids harassing conduct.

214. Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) has threatened foreclosure when

---

[16] While it is currently fashionable for Defendants to argue in motions to dismiss that they have no idea what claims and facts are alleged against them and to throw out the words "shot gun pleadings" and "lack of plausibility" etc. this does not change the fact that in this Second Amended Complaint the roles and actions of each Defendant are clearly set forth in the facts.

Plaintiff owed nothing, Plaintiff was not late, there was not even a mortgage on the property, etc.

215.  The natural consequence of this is to cause Plaintiff to feel harassed and oppressed as Plaintiff owed nothing but was facing foreclosure, the threat of false and negative credit reporting, and having each Defendant claim that Plaintiff owed money.

216.  As well as having Defendant Panatte sell a debt (and/or the servicing rights) that it knew 100% was paid off – this is very frustrating and abusive and harassing.  This was deliberate action taken without regard for Plaintiff or Defendant Panatte did take regard and decided the profit was worth the harassment and abuse and oppression of Plaintiff.  In addition, Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan recorded the corporate assignment of mortgage dated February 7, 2019 (recorded in Probate Court on March 15, 2019) which is a misrepresentation and unfair and harassing/oppressive conduct as it says to the world that Plaintiff owes this debt when Plaintiff does not.  Defendant Panatte signed the corporate assignment but it is unknown who filed it. (Attached as Exhibit 30).

217. The same is true of Defendant Land Home knowing nothing is owed, transferring the servicing rights to Defendant SN Servicing. There is no reason for this other than to harass and abuse and oppress Plaintiff.

218. Defendant SN Servicing accepted the servicing rights knowing the status of the non-existent debt is abusive and harassing because then it started to collect against Plaintiff.

219. Defendant Reliant Loan also intentionally decided to purchase this non-existent debt knowing this would lead to the abuse and harassment and oppression of Plaintiff in threatening her and collecting against her as alleged in this Second Amended Complaint.

220. Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) has violated 15 USC Section 1692e, which forbids any deceptive conduct in collecting the debt.

221. Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) has done this in a number of ways described in this Second Amended Complaint including but not limited to:

    a. Threatening to foreclose with no legal right to foreclose.

    b. Stating that money is owed when no money is owed.

    c. Threatening to and actually imposing late fees that are not allowed.

    d. Threatening to impose charges and fees without the legal right to do so.

e.  Threatening to credit report a false balance and false information about missing payments or other negative information.  Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) knew this or should have known these are false.

f.  The mortgage statements represent the wrong amount, and reflect property inspections and other fees that are illegal and did not or should not have been charged to Plaintiff.

g.  False and misleading responses to Plaintiff's dispute and request for information letters.

h.  Defendant Panatte and Defendant Land Home also lied or deceived Defendant Reliant Loan and Defendant SN Servicing with the intention that such deception would harm Plaintiff when Defendant Panatte and Defendant Land Home sold/transferred the ownership/servicing of a non existent debt but told Defendant Reliant Loan and Defendant SN Servicing that the debt was owing.

i.  As well as having Defendant Panatte sell a debt (and/or the servicing rights) that it knew 100% was paid off – this is very frustrating and abusive and harassing.  This was deliberate action taken without regard for Plaintiff or Defendant Panatte did take regard and decided the profit

was worth the harassment and abuse and oppression of Plaintiff.  In addition, Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan recorded the corporate assignment of mortgage dated February 7, 2019 (recorded in Probate Court on March 15, 2019) which is a misrepresentation and unfair and harassing/oppressive conduct as it says to the world that Plaintiff owes this debt when Plaintiff does not.  Defendant Panatte signed the corporate assignment but it is unknown who filed it so all are alleged to have recorded it.

222.  The subsections of 15 USC Section 1692e are merely examples of violations of 15 USC Section 1692e but since some debt collectors view them as separate causes of action, Plaintiff will break them down here to prevent a time wasting motion to dismiss.

223.  15 USC Section 1692e(2) has been violated as the character and legal status of the loan have been misrepresented as shown above.  The same is true with the amount, which has not been accurately represented to Plaintiff.  The character and status of the loan is that nothing is owed and the loan does not exist but each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) has said otherwise to Plaintiff directly or through their agents.  As well as

having Defendant Panatte sell a debt (and/or the servicing rights) that it
knew 100% was paid off – this is very frustrating and abusive and
harassing.  This was deliberate action taken without regard for Plaintiff or
Defendant Panatte did take regard and decided the profit was worth the
harassment and abuse and oppression of Plaintiff.  In addition, Defendant
Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant
Reliant Loan recorded the corporate assignment of mortgage dated
February 7, 2019 (recorded in Probate Court on March 15, 2019) which is
a misrepresentation and unfair and harassing/oppressive conduct as it says
to the world that Plaintiff owes this debt when Plaintiff does not.
Defendant Panatte signed the corporate assignment but it is unknown who
filed it so all are alleged to have recorded it.

224.  15 USC Section 1692e(4) forbids falsely threatening to take property.
Here (as described above also) each Defendant (Defendant Panatte,
Defendant Land Home, Defendant SN Servicing, and Defendant Reliant
Loan) has done this by directly or through its agents threatening to
foreclose on a loan, which does not exist and/or was fully paid off as of
February 2018.

225.  15 USC Section 1692e(5) has been repeatedly violated as each Defendant
(Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and

Defendant Reliant Loan) has threatened to take action that it knows it cannot legally take and/or that it has no intention of taking.  One obvious example (among the many listed above) is the threat to foreclose and threat to impose late fees when there is no legal right to do so.  As well as having Defendant Panatte sell a debt (and/or the servicing rights) that it knew 100% was paid off – this is very frustrating and abusive and harassing. This was deliberate action taken without regard for Plaintiff or Defendant Panatte did take regard and decided the profit was worth the harassment and abuse and oppression of Plaintiff.  In addition, Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan recorded the corporate assignment of mortgage dated February 7, 2019 (recorded in Probate Court on March 15, 2019) which is a misrepresentation and unfair and harassing/oppressive conduct as it says to the world that Plaintiff owes this debt when Plaintiff does not. Defendant Panatte signed the corporate assignment but it is unknown who filed it so all are alleged to have recorded it.

226.  15 USC Section 1692e(10), which like the main section of 15 USC Section 1692e, simply forbids any false or deceptive means to collect a debt.  The examples listed above are full of such misconduct by each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and

Defendant Reliant Loan) directly or indirectly through its agents.  As well as having Defendant Panatte sell a debt (and/or the servicing rights) that it knew 100% was paid off – this is very frustrating and abusive and harassing.  This was deliberate action taken without regard for Plaintiff or Defendant Panatte did take regard and decided the profit was worth the harassment and abuse and oppression of Plaintiff.  In addition, Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan recorded the corporate assignment of mortgage dated February 7, 2019 (recorded in Probate Court on March 15, 2019) which is a misrepresentation and unfair and harassing/oppressive conduct as it says to the world that Plaintiff owes this debt when Plaintiff does not. Defendant Panatte signed the corporate assignment but it is unknown who filed it so all are alleged to have recorded it.

227.  15 USC Section 1692f forbids each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) and its agents from engaging in any unfair or unconscionable conduct.  Here are examples of some of the unfair conduct by each Defendant directly or indirectly through its agents:

a.  Threatening to foreclose when there was no basis to do so.

b.  Threatening to collect money that is not owed.

c.   Imposing charges and fees when such are not allowed.

d.   Threatening to collect illegal charges and fees and charges and fees that are not and could not possibly be owed.

e.   As well as having Defendant Panatte sell a debt (and/or the servicing rights) that it knew 100% was paid off – this is very frustrating and abusive and harassing.  This was deliberate action taken without regard for Plaintiff or Defendant Panatte did take regard and decided the profit was worth the harassment and abuse and oppression of Plaintiff.   In addition, Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan recorded the corporate assignment of mortgage dated February 7, 2019 (recorded in Probate Court on March 15, 2019) which is a misrepresentation and unfair and harassing/oppressive conduct as it says to the world that Plaintiff owes this debt when Plaintiff does not.   Defendant Panatte signed the corporate assignment but it is unknown who filed it so all are alleged to have recorded it.

228.  As noted above with 15 USC Section 1692e, the subsections of 15 USC Section 1692f are merely illustrations, not separate causes of action but in an abundance of caution, Plaintiff will go through several sections.

229.  15 USC Section 1692f(1) forbids each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) from collecting any amount that is not expressly authorized by the mortgage or note.

230.  This has been violated as shown above as nothing is owed so the note and mortgage allow the collection of absolutely nothing, and certainly do not allow the collection of unauthorized late charges/fees.  As well as having Defendant Panatte sell a debt (and/or the servicing rights) that it knew 100% was paid off – this is very frustrating and abusive and harassing. This was deliberate action taken without regard for Plaintiff or Defendant Panatte did take regard and decided the profit was worth the harassment and abuse and oppression of Plaintiff.   In addition, Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan recorded the corporate assignment of mortgage dated February 7, 2019 (recorded in Probate Court on March 15, 2019) which is a misrepresentation and unfair and harassing/oppressive conduct as it says to the world that Plaintiff owes this debt when Plaintiff does not. Defendant Panatte signed the corporate assignment but it is unknown who filed it so all are alleged to have recorded it.

231.   Each Defendant (directly or through its agent debt collector) has collected money not owed or allowed under the contract.

232.   15 USC Section 1692f(6) forbids each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) from taking or threatening to take the property of Plaintiff in foreclosure when there was no right to possession as nothing is owed.

233.   Each Defendant (directly or through its agent debt collector) has threatened foreclosure even though Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan know there is no money owed and no basis to threaten foreclosure.  As well as having Defendant Panatte sell a debt (and/or the servicing rights) that it knew 100% was paid off – this is very frustrating and abusive and harassing. This was deliberate action taken without regard for Plaintiff or Defendant Panatte did take regard and decided the profit was worth the harassment and abuse and oppression of Plaintiff.  In addition, Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan recorded the corporate assignment of mortgage dated February 7, 2019 (recorded in Probate Court on March 15, 2019) which is a misrepresentation and unfair and harassing/oppressive conduct as it says to the world that Plaintiff owes this debt when Plaintiff does not.

Defendant Panatte signed the corporate assignment but it is unknown who filed it so all are alleged to have recorded it.

234.  15 USC Section 1692g has been violated by each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) by not sending a 1692g validation notice within 5 days of the initial communication and then not responding properly to a validation request.  Note:  Defendant Panatte did not send a defective 1692g notice directly but it is responsible for the acts of its debt collector agent Defendant Land Home, as is Defendant Reliant Loan responsible for its debt collector agent Defendant SN Servicing.

235.  Both Defendant SN Servicing and Defendant Land Home failed to adequately and properly send 1692g notices and failed to respond to verification disputes from Plaintiff.

236.  Defendant Reliant Loan also failed to directly respond to verification disputes by Plaintiff.  Both of these agents (Defendant Land Home and Defendant SN Servicing) also continued to collect against Plaintiff on behalf of their principals (Defendant Panatte for Defendant Land Home and Defendant Reliant Loan for Defendant SN Servicing) which is forbidden until they properly validate/verify the debt in response to Plaintiff's disputes.

## FINAL FACTUAL ALLEGATIONS AGAINST EACH DEFENDANT

237.  Knowing that each Defendant has violated the federal and state laws as well as refusing to follow the contract (mortgage and note), is very upsetting and has caused emotional distress and mental anguish to Plaintiff.

238.  Plaintiff does not know what other illegal acts each Defendant will commit but it is obvious to Plaintiff that each Defendant will continue to illegally collect a non-existent debt and attempt to take Plaintiff's home and this has caused and will continue to cause great emotional distress and mental anguish as more specifically alleged above.

239.  Will Defendant Panatte continue to try to collect?  Will it sell the debt (which doesn't exist) to anyone else?

240.  Will Defendant Land Home tell Plaintiff on the one hand that no money is owed but then on the other hand transfer the servicing to a new company and tell the new company that money is owed as it did with Defendant SN Servicing?

241.  Will Defendant SN Servicing continue to collect and threaten and ignore Plaintiff's requests?

242.  Will Defendant Reliant Loan continue to collect and threaten and ignore Plaintiff's requests?

243. Will Defendant SN Servicing transfer servicing to another company and tell that company Plaintiff owes this debt?

244. Will Defendant Reliant Loan sell the non-existent debt to someone else and fail to tell them that Plaintiff owes nothing – will it use attorney Fogleman to tell the new purchaser that Plaintiff owes money?

245. All employees and agents of each Defendant (Defendant Panatte, Defendant SN Servicing, Defendant Land Home, and Defendant Reliant Loan) acted with the line and scope of their employment and/or agency relationship with each Defendant.

246. Each Defendant has refused to apologize to Plaintiff for its misconduct against Plaintiff.

247. All letters from Defendant SN Servicing were sent with the approval of and by the authority of Defendant Reliant Loan.

248. All actions of Defendant SN Servicing were made in the line and scope of its employment and/or agency relationship with Defendant Reliant Loan.

249. All inactions of Defendant SN Servicing were made in the line and scope of its employment and/or agency relationship with Defendant Reliant Loan.

250. All actions of attorney Fogleman were made in the line and scope of his employment and/or agency relationship with Defendant Reliant Loan and Defendant SN Servicing.

251.   All actions (including all letters sent) on behalf of Defendant Land Home were taken in the line and scope of its employment and/or agency relationship with Defendant Panatte.

252.   All inactions of Defendant Land Home were made in the line and scope of its employment and/or agency relationship with Defendant Panatte.

253.   Defendant   Panatte   is   responsible   for   its   own   acts   (including selling/transferring a non existent debt to Defendant Reliant Loan) and for the acts of its agent debt collector Defendant Land Home.

254.   Defendant Reliant Loan is liable for its own acts as well as the acts of its debt collector agent Defendant SN Servicing.


**COUNT I**
**VIOLATIONS OF RESPA**
**(Defendant Land Home, Defendant SN Servicing and**
**Defendant Reliant Loan)**

255.   Plaintiff sent RESPA letters in writing to Defendant Land Home and Defendant SN Servicing and Defendant Reliant Loan.  These are attached as Exhibits 5-6 and 16.

256.   The letters sent to Defendant Land Home sufficiently identified who Plaintiff is and the loan at issue as well as what servicing information was being requested.

257.  The letter sent to Defendant Reliant Loan sufficiently identified who Plaintiff is and the loan at issue as well as what servicing information was being requested.

258.  The letter sent to Defendant SN Servicing sufficiently identified who Plaintiff is and the loan at issue as well as what servicing information was being requested.

259.  Defendant Land Home refused to send an acknowledgement letter within 5 business days of receipt of the RESPA letter.

260.  Defendant SN Servicing and Defendant Reliant Loan refused to send an acknowledgement letter within 5 business days of receipt of the RESPA letter.

261.  Defendant Land Home and Defendant SN Servicing and Defendant Reliant Loan refused to substantively respond to all requests for information from Plaintiff in violation of RESPA.

262.  Defendant Land Home and Defendant SN Servicing and Defendant Reliant Loan  have each exhibited a pattern and practice of failing to comply with the Regulations in their dealings with Plaintiff and in their dealings with consumers across the nation who will be identified as pattern and practice witnesses during discovery.

263.  As a result of this lack of compliance by Defendant Land Home and Defendant SN Servicing and Defendant Reliant Loan, they are each liable to

Plaintiff for actual damages, statutory damages for each violation, costs and attorneys fees.

264. The violations of the law by Defendant Land Home and Defendant SN Servicing and Defendant Reliant Loan have resulted in mental anguish, emotional distress, financial loss, damage to credit, and other damages that will be identified in discovery.

265. When the Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan refused to comply with valid requests for information, each of them deprived Plaintiff of information she had a right to know, it kept Defendant Land Home, Defendant SN Servicing and Defendant Reliant Loan from acknowledging they violated the law, as if each such Defendant had investigated they would have seen no money was owed on this loan.

266. Each Defendant, though they received Plaintiff's letters, failed to acknowledge the letters which along with the refusal to substantively answer, caused Plaintiff to be deprived of information she was rightfully entitled to know, which would have helped her to be able to understand why these three Defendants were harassing and abusing her as described in this Second Amended Complaint.  Knowledge is power but these three Defendants (Defendant Land Home, Defendant SN Servicing and Defendant Reliant Loan) purposefully, willfully and wrongfully took that power away from

Plaintiff and put her in a vulnerable position in an attempt to force her to pay money on a debt she did not owe to save her house, her health and sanity. These consequences are a direct result of these three Defendants violating RESPA.

267. As a direct result of the activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan all damages allowable under the law.

268. This Count is based upon the paragraphs in this Count, as well as Paragraphs 3-8, 9-29, 30-47, 51-54, 56-68, 69-90, 92-97, 99-100, 101-108, 113, 114-151, 167-170, 172-175, 180-184, 187-188, 237, 245-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

**COUNT II**

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT[17]
## 15 U.S.C. § 1692d (All Defendants)

269. Section 1692d states "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

270. It is natural and to be expected when a debt collector such as each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) collects in the manner it did, that it will cause harassment, oppression and abuse of the Plaintiff.  This is exactly what happened.

271. As a result of each Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from each Defendant.

272. This Count is based upon the paragraphs in this Count as well as Paragraphs 3-8, 9-29, 30-47, 48-50, 51-54, 56-68, 69-90, 91, 92-98, 99-100, 101-108, 109-113, 114-151, 152-166, 171-175, 176-179, 180-184, 185-186, 187-188, 189-212, 213-219, 237-244, 245-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

---

[17] Plaintiff does not believe there are actually different causes of action on each subsection but to make this as easy as possible for Defendants to respond to the complaint, each section and subsection will be broken out into a separate Count.

273.   As a direct result of the collection activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

## COUNT III

## VIOLATIONS OF THE FAIR DEBT COLLECTIONPRACTICES ACT
## 15 U.S.C. § 1692e (All Defendants)

274.   Section 1692e states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section."

275.   It is certainly false, deceptive, and misleading to collect a debt that does not exist, an amount that is not owed, and to threaten to take a consumer's home when each of the debt collector Defendants (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) had no right to do so.

276. As a result of each Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from each Defendant.

277. This Count is based upon the paragraphs in this Count as well as Paragraphs 3-8, 9-29, 30-47, 48-50, 51-54, 56-68, 69-90, 91, 92-98, 99-100, 101-108, 109-113, 114-151, 152-166, 171-175, 176-179, 180-184, 185-186, 187-188, 189-212, 220-221, 237-244, 245-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

278. As a direct result of the collection activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

## COUNT IV

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(4) (All Defendants)

279. Section 1692e(4) states "The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."

280. This section prohibits exactly what each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) did – threaten to take Plaintiff's home when there was no legal right to do so and/or Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan had no intention to do so.

281. As a result of Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from each Defendant.

282. This Count is based upon the paragraphs in this Count as well as Paragraphs 3-8, 9-29, 30-47, 48-50, 51-54, 56-68, 69-90, 91, 92-98, 99-100, 101-108, 109-113, 114-151, 152-166, 171-175, 176-179, 180-184, 185-186, 187-188, 189-212, 224, 237-244, 245-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

283. As a direct result of the collection activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

## COUNT V

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(5) (All Defendants)

284. Section 1692e(5) states "The threat to take any action that cannot legally be taken or that is not intended to be taken."

285. This section prohibits exactly what each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) – threaten to take the property, charging fees when none could be charged, collecting the debt when there is no debt to collect – when each Defendant had no lawful right to do so and/or where each Defendant never intended to follow through on its threats.

286.  As a result of each Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from each Defendant.

287.  This Count is based upon the paragraphs in this Count as well as Paragraphs 3-8, 9-29, 30-47, 48-50, 51-54, 56-68, 69-90, 91, 92-98, 99-100, 101-108, 109-113, 114-151, 152-166, 171-175, 176-179, 180-184, 185-186, 187-188, 189-212, 225, 237-244, 245-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

288.  As a direct result of the collection activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

## COUNT VI

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(10) (All Defendants)

289.  Section 1692e(10) states "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

290.   It is certainly false to collect a debt that does not exist, an amount that is not owed, and to threaten to take a consumer's home when the debt collector Defendants (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) had no right to do so.

291.   As a result of each Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from each Defendant.

292.   This Count is based upon the paragraphs in this Count as well as Paragraphs 3-8, 9-29, 30-47, 48-50, 51-54, 56-68, 69-90, 91, 92-98, 99-100, 101-108, 109-113, 114-151, 152-166, 171-175, 176-179, 180-184, 185-186, 187-188, 189-212, 226, 237-244, 245-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

293.   As a direct result of the collection activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

## COUNT VII

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692f (All Defendants)

294.   Section 1692f states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

295.   It is unfair to collect a debt not owed and to threaten to foreclose when there is no right to do so.  Each Defendant's (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) conduct is the classic case of unfair debt collection.

296.   As a result of each Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from each Defendant.

297.   This Count is based upon the paragraphs in this Count as well as Paragraphs 3-8, 9-29, 30-47, 48-50, 51-54, 56-68, 69-90, 91, 92-98, 99-100, 101-108, 109-113, 114-151, 152-166, 171-175, 176-179, 180-184, 185-186, 187-188, 189-212, 227, 237-244, 245-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

298.   As a direct result of the collection activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI

issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's

reputation, economic and emotional damages and claim from each and every

Defendant all damages allowable under the law.

**COUNT VIII**

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692f(1) (All Defendants)**

299.   Section 1692f(1) states "The collection of any amount (including any interest,

fee, charge, or expense incidental to the principal obligation) unless such

amount is expressly authorized by the agreement creating the debt or

permitted by law."

300.   Nowhere in the mortgage or the note is there permission for any Defendant to

collect on debt not owed or to threaten to foreclose when there is no legal right

to do so or to charge late fees when the contract does not allow them in the

amount charged by each Defendant.

301.   As a result of each Defendant's (Defendant Panatte, Defendant Land Home,

Defendant SN Servicing, and Defendant Reliant Loan) violations of the

FDCPA, Plaintiff is entitled to actual damages; statutory damages; and

reasonable attorney's fees, expenses and costs from each Defendant.

302.   This Count is based upon the paragraphs in this Count as well as Paragraphs

3-8, 9-29, 30-47, 48-50, 51-54, 56-68, 69-90, 91, 92-98, 99-100, 101-108,

109-113, 114-151, 152-166, 171-175, 176-179, 180-184, 185-186, 187-188,

189-212, 229-231, 237-244, 245-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

303.  As a direct result of the collection activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

## COUNT IX

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692f(6) (All Defendants)

304.  Section 1692f(6) states "Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if - (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."

305.  This is exactly what each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) did – threatened

to take Plaintiff's property without the right to do so or if each Defendant never intended on taking it, then it also violated this subsection of the FDCPA.

306. As a result of each Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from each Defendant.

307. This Count is based upon the paragraphs in this Count as well as Paragraphs 3-8, 9-29, 30-47, 48-50, 51-54, 56-68, 69-90, 91, 92-98, 99-100, 101-108, 109-113, 114-151, 152-166, 171-175, 176-179, 180-184, 185-186, 187-188, 189-212, 232-233, 237-244, 245-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

308. As a direct result of the collection activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

## COUNT X

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692g (All Defendants)

309.   Section 1692g states written notice must be sent to consumer informing consumer of certain rights under the FDCPA.

310.   Defendant Land Home refused to send this communication to Plaintiff within 5 days of the initial communication of July 20, 2018.

311.   Defendant SN Servicing and Defendant Reliant Loan refused to send this communication within 5 days of their initial communication of February 1, 2019.

312.   Defendant Panatte and Defendant Land Home collected again (by selling the debt/servicing) without verifying the debt in response to Plaintiff's dispute to Defendant Land Home whose knowledge of the dispute was imputed to its principal, Defendant Panatte, especially since they had previously told Plaintiff no money was owed.

313.   In addition, Defendant SN Servicing and Defendant Reliant Loan refused to properly verify the debt and instead continued to collect on the debt before verification and after the defective verification of May 13, 2019 (Exhibit 23).

314.   As a result of each Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from each Defendant.

315.   This Count is based upon the paragraphs in this Count as well as Paragraphs 3-8, 9-29, 30-47, 48-50, 51-54, 56-68, 69-90, 91, 92-98, 99-100, 101-108, 109-113, 114-151, 152-166, 171-175, 176-179, 180-184, 185-186, 187-188, 189-212, 237-244, 245-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

316.   As a direct result of the activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

## COUNT XI

## BREACH OF CONTRACT (All Defendants)

317.   Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) claims to have a contract (Note and Mortgage) with Plaintiff but each Defendant breached the contract with Plaintiff.

318.   No money is owed so there is no right for any Defendant to collect or threaten foreclosure.

319. The contract (note/mortgage) do not allow collecting money when no money is owed, do not allow late fees when no payment is late, do not allow late fees in excess of 5%, do not allow threatening to foreclose when no money is owed, etc.

320. Plaintiff is not in breach of the contract as there is no debt owed.

321. Plaintiff has performed under the contract by satisfying the contract in its entirety – no money is owed.

322. The breaches of contract by each Defendant have damaged and harmed Plaintiff. This includes, but is not limited to, the threat of the foreclosure, and the assertion that Plaintiff owes money she does not owe.

323. Alabama law recognizes that breaches of contract related to a home are especially upsetting and can be the basis for emotional distress damages, especially where there is egregious conduct as occurred here.

324. The Plaintiff has suffered and will continue to suffer emotional distress, mental anguish, and monetary loss as a direct consequence of the breaches of contract by each Defendant.

325. As a result of each Defendant's breach of contract, Plaintiff is entitled to nominal damages, compensatory damages, and reasonable attorney's fees, expenses and costs from each Defendant.

326. This Count is based upon the paragraphs in this Count as well as Paragraphs 9-20, 22-24, 25-29, 30-51, 54, 56-68, 69-83, 86-90, 92-100, 101-113, 114-151, 152-166, 171-188, 223, 237-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

327. As a direct result of the activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

328. Note:   Under FRCP 8, Plaintiff is allowed to plead in the alternative or inconsistently and does so with regard to the contract.  There is no contract as the debt has been long ago satisfied but since each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) claims there is a contract, this Count is pled as well as Count XIII (Negligence/Wantonness since there is no contract between any Defendant and the Plaintiff).

## COUNT XII

### NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS AND EMPLOYEES/AGENTS (All Defendants)

329.  Each Defendant's (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) collectors and employees/agents are allowed and encouraged to break Alabama tort law in order to collect debts and foreclose on homes.

330.  The Alabama tort laws violated includes:  negligence, wantonness, and invasion of privacy.

331.  Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) is aware of the wrongful conduct of its agents and/or employees.

332.  The actions of each Defendant's (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) agents and employees were not done secretly but instead were done openly.

333.  Letters were sent, the debt was sold, etc.  What each agent and employee did as described in this Second Amended Complaint was known to each Defendant.

334.  And the conduct of Defendant Land Home clearly demonstrates incompetency and violations of the law to Defendant Panatte but Defendant Panatte continued to allow Defendant Land Home to represent it and collect against Plaintiff.

335.   The conduct of Defendant SN Servicing was clearly wrongful and incompetent but its principal, Defendant Reliant Loan, was unwilling to remove Defendant SN Servicing from collecting on this non-existent debt of Plaintiffs so much so that Defendant SN Servicing and Defendant Reliant Loan are still collecting to this day on this non-existent debt.

336.   Clearly each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) knew or should have known of the violations of Alabama tort law if it had exercised any due care.

337.   As no Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) has apologized in any way to Plaintiff, it is apparent that the each Defendant intended for Plaintiff to be treated the way Plaintiff was treated by each Defendant's employees and agents.

338.   Despite the knowledge of what was happening, each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) refused to correct, discipline, supervise or make right the wrongful conduct of its agents and employees who violated Alabama tort law.

339.   Instead, each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) has intentionally (or wantonly or negligently) reaped the rewards of and encouraged its employees and agents to violate Alabama tort law.

340. Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent employees or agents, who were allowed or encouraged to violate Alabama law as was done to Plaintiff, and each Defendant is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

341. This Count is based upon the paragraphs in this Count as well as Paragraphs 3-8, 9-29, 30-47, 48-50, 51-54, 56-68, 69-90, 91, 92-98, 99-100, 101-108, 109-113, 114-151, 152-166, 171-175, 176-179, 180-184, 185-186, 187-188, 189-212, 213-236, 237-244, 245-254 of this Second Amended Complaint (along with the allegations in Counts 13, 14, and 15) which describe what each Defendant did in violation of this law.

342. As a direct result of the activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

**COUNT XIII**

## NEGLIGENT AND/OR WANTON CONDUCT (All Defendants)

343. Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care when it decided to threaten to foreclose and claim money was owed when no such money was owed.

344. There is no contract between Plaintiff and each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) and there is no contractual relationship between Plaintiff and each Defendant.

345. So when each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) decided to collect money and to threaten a foreclosure, with no contact and not contractual right to do so, it was obligated to proceed with reasonable and due care.

346. Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiff when it began to collect against Plaintiff and threaten foreclosure.

347. Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) violated all of the duties each Defendant had and such violations were made wantonly.

348. This is especially true as there is not even a contract between each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) and Plaintiff.

349. It was foreseeable, and each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) did in fact foresee it, that the actions of each Defendant would lead and did lead to the exact type of harm suffered by Plaintiff.

350. Plaintiff has been damaged by each Defendant's (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) wrongful conduct as described in this Complaint.

351. This Count is based upon the paragraphs in this Count as well as Paragraphs 3-8, 9-29, 30-47, 48-50, 51-54, 56-68, 69-90, 91, 92-98, 99-100, 101-108, 109-113, 114-151, 152-166, 171-175, 176-179, 180-184, 185-186, 187-188, 189-212, 213-236, 237-244, 245-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

352. As a direct result of the activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's

reputation, economic and emotional damages and claim from each and every

Defendant all damages allowable under the law.

## COUNT XIV

## INVASION OF PRIVACY (All Defendants)

353.   Alabama law recognizes Plaintiff's right to be free from invasions of privacy
       and each Defendant violated Alabama state law as described in this
       Complaint.

354.   Congress explicitly recognized a consumer's inherent right to privacy in
       collection matters in passing the Fair Debt Collection Practices Act, when it
       stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of
> personal bankruptcies, to marital instability, to the loss of jobs,
> and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

355.   Congress further recognized a consumer's right to privacy in financial data in
       passing the Gramm Leech Bliley Act, which regulates the privacy of
       consumer financial data for a broad range of "financial institutions" including
       debt collectors (albeit without a private right of action), when it stated as part
       of its purposes:

> It is the policy of the Congress that **each financial institution
> has an affirmative and continuing obligation to respect the
> privacy of its customers** and to protect the security and

confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

356.  Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) and/or its agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

357.  Each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) and its agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt including illegally threatening to take Plaintiff's home, trying to take Plaintiff's money and all other wrongful acts which will come to light in discovery, thereby invading and intruding upon Plaintiff's right to privacy.

358.  It is hard to imagine a more unreasonable form of collection by a debt collector or a creditor than to use the threat of an illegal foreclosure to wrench money from a consumer Plaintiff.  This is what each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) did to Plaintiff when she owed no money to any Defendant (Defendant

Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan).

359.   Combined with illegally charging and collecting a non existent debt, no greater pressure could ever be brought against an Alabama consumer as occurred here to the Plaintiff as a direct and proximate result of each Defendant's (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) actions.

360.   The conduct of each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) truly goes well beyond any bounds of reasonableness and is simply inexcusable in this modern age.

361.   The plan and scheme carried out by each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) exceeded the bounds of reasonableness that govern the collection of debts, as there is no right to collect this nonexistent debt and no right to threaten to foreclose.

362.   Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

363.   The conduct of each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) and its agents, in engaging in the above-described illegal collection conduct against Plaintiff,

resulted in multiple intrusions and invasions of privacy by each Defendant which occurred in a way that would be highly offensive to a reasonable person in that position.

364.  Plaintiff is entitled to actual damages (including emotional distress, mental anguish and monetary losses) in an amount to be determined at trial from each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan).

365.  All invasions of privacy acts of each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) and its agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such each Defendant is subject to punitive damages as well as nominal and compensatory damages.

366.  This Count is based upon the paragraphs in this Count as well as Paragraphs 3-8, 9-29, 30-47, 48-50, 51-54, 56-68, 69-90, 91, 92-98, 99-100, 101-108, 109-113, 114-151, 152-166, 171-175, 176-179, 180-184, 185-186, 187-188, 189-212, 213-236, 237-244, 245-254 of this Second Amended Complaint which describe what each Defendant did in violation of this law.

367.  As a direct result of the activity described, Plaintiff has and will continue to suffer great mental anguish and emotional distress, including but not limited to stress, anxiety, worry, frustration and embarrassment, and physical

manifestations such as a racing heart, elevated blood pressure, GI issues, difficulty sleeping, difficulty concentrating, etc, damage to Plaintiff's reputation, economic and emotional damages and claim from each and every Defendant all damages allowable under the law.

## **RELIEF REQUESTED**

**WHEREFORE,** Plaintiff having set forth Plaintiff's claims for relief against each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan), Plaintiff respectfully prays of the Court as follows:

a.   That Plaintiff have and recover against each Defendant (Defendant Panatte, Defendant Land Home, Defendant SN Servicing, and Defendant Reliant Loan) a sum to be determined by a jury in the form of actual/compensatory damages; nominal damages; punitive damages; and statutory damages;

b.   That each Defendant be enjoined from further violations of the law against Plaintiff;

c.   That Plaintiff have reasonable attorney's fees, costs, expenses; and

d.   That Plaintiff has such other and further and proper relief as the Court may deem just and proper.

Respectfully Submitted,

/s/John G. Watts
John G. Watts (ASB-5819-t82j)

M. Stan Herring (ASB-1074-n72m)
**Attorneys for Plaintiff**

**OF COUNSEL:**
**Watts & Herring, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

/s/John G. Watts
**Attorney for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Christopher A. Bottcher
T. Dylan Reeves
Lacy M. Triplett
McGlinchey Stafford
505 North 20th Street, Suite 800 Birmingham, AL 35203

Bryce Robert Noel
Christopher J. Reading
Aldridge Pite, LLP
3575 Piedmont Road NE
Fifteen Piedmont Center, Suite 500
Atlanta, Georgia 30305

/s/ John G. Watts
OF COUNSEL